# United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

_____

No. 11-1417

_____

Richard Gacek,                                  *
                                                *
              Appellant,                        *
                                                *
       v.                                       *     Appeal from the United States
                                                *     District Court for the
Owens & Minor Distribution, Inc.;               *     District of Minnesota.
Marc W. Johnson; Gregory Frank                  *
Mattson,                                        *
                                                *
              Appellees.                        *

_____

Submitted: October 19, 2011
Filed: January 27, 2012

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Richard Gacek appeals the decision of the district court[1] granting summary judgment to defendants Owens & Minor Distribution, Inc. ("Owens & Minor") and Marc Johnson on Gacek's 42 U.S.C. § 1981 retaliation claim and to defendant

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Gregory Mattson on Gacek's state-law defamation claim. For the reasons discussed below, we affirm.

## I. BACKGROUND

Gacek, a white male, was employed by Owens & Minor as a materials handler (i.e., a forklift operator) at its warehouse in Mounds View, Minnesota. In September 2008, a recently terminated Owens & Minor materials handler, Mesfin Tewolde, filed a racial discrimination suit against Owens & Minor. Owens & Minor advanced as a legitimate reason for terminating Tewolde's employment that Tewolde violated a company policy by routinely failing to sign a forklift checkout sheet. Tewolde countered that this reason was a pretext for discrimination because Owens & Minor never disciplined other employees who failed to sign the sheet and that, in fact, a few employees routinely signed improperly on behalf of other materials handlers. In a deposition, Gacek supported Tewolde's argument, testifying that he (Gacek) often failed to sign the checkout sheet because he knew someone else would sign for him. Other employees, including Sean Tyo and Rick Flannigan, gave similar deposition testimony. Owens & Minor thereafter settled Tewolde's suit.

Johnson, the general manager of the Mounds View warehouse, attended the depositions. Ten days after the depositions, Johnson summoned Gacek, Tyo, Flannigan, and another materials handler, Rodney Foner, into a meeting to investigate the checkout-sheet violations discussed in the depositions. Johnson determined that Tyo and Foner were the individuals signing the checkout sheet on behalf of other employees and issued disciplinary warnings to them. Gacek was not disciplined.

Meanwhile, in November 2008, Owens & Minor management authorized another employee, Bill Showers, to start and end his shifts one hour early for personal reasons. Other employees complained to Gacek that Showers might be manipulating

the system so that he could leave early to go hunting.[2]  On November 4, Gacek complained to Johnson about Showers's schedule, and Johnson caused Showers to be summoned at the end of his shift for questioning.  Showers left that meeting, went home, and took his own life with a firearm.

Defendant Mattson, another employee at the warehouse, had been a friend of Showers.  It is undisputed that on November 6, Mattson told co-workers that Gacek's complaint about Showers's work schedule "pushed Showers over the edge," that it was "the straw that broke the camel's back," and that Gacek "was the reason for Bill's death."  Gacek learned of these comments on November 13 and filed a complaint against Mattson with management.  That same day, Gacek confronted Mattson in front of a large gathering of employees.  Gacek loudly stated, "Greg, what is this I hear you have been telling people I killed Bill Showers?"  Mattson responded, "Is that so hard to believe?"  Gacek concedes that he then swore loudly at Mattson, that another employee spoke in Mattson's defense, and that Gacek responded by repeatedly bumping that employee while making statements such as "hit me, I dare you to hit me right now."

The following day, management warned Gacek and Mattson to stay away from each other.  Gacek concedes, however, that later the same day he stopped his forklift and stared at Mattson until a supervisor instructed Gacek to return to work.  In January 2009, another employee witnessed Gacek drive his forklift into Mattson's foot.  In March 2009, while Mattson was standing next to a large open space in the break room, yet another employee witnessed Gacek walk through and "bump" Mattson.  That day Mattson decided to file a written complaint concerning Gacek's conduct.

---

[2]At times during his employment with Owens & Minor, Gacek served as a union steward.  The parties dispute whether Gacek was acting as a union steward in November 2008, but this is not a material fact.

Upon receiving Mattson's complaint, Owens & Minor's corporate headquarters in Virginia sent human resources specialist Neal Gifford to Mounds View to investigate. Although Gifford initially intended to investigate solely the incidents involving Gacek and Mattson, he found that warehouse employees were eager to report other alleged wrongdoing by Gacek. Gifford concluded that Gacek had committed a number of violations of company policy, including the following actions that are not disputed by Gacek: (1) refusing to sign Owens & Minor's Warehouse Rules because he disagreed with them; (2) writing "don't agree" on his acknowledgment form for Owens & Minor's materials handling equipment safety policy; (3) striking out language on his acknowledgment form for Owens & Minor's Code of Honor obligating him to comply with its policies, and writing "I disagree with signing this pledge" under his signature; (4) yelling at a human resources employee in April 2004 that she was not doing her job and that she did not know what she was talking about, and again in May 2004 that she was not doing her job and that "this is bullshit"; (5) physically intimidating the employee who spoke in defense of Mattson on November 13, 2008 and attempting to instigate a fight with him in front of other employees; and (6) stopping his forklift and staring at Mattson on November 14, 2008—after being told to stay away from Mattson earlier that day—until a supervisor ordered him to return to work. Gifford also concluded that Gacek had disrupted team meetings, left security doors propped open on at least two occasions, and driven his forklift dangerously close to Mattson to harass him.

Pursuant to Gifford's recommendation, Owens & Minor terminated Gacek's employment on April 13, 2009 for "violations of company policies, including but not limited to creation of a hostile and intimidating work environment and engaging in unsafe work practices." Gacek's union initially filed a grievance but decided not to pursue it. Gacek then filed this lawsuit for retaliation under 42 U.S.C. § 1981 against Owens & Minor and Johnson, and for defamation under Minnesota law against Mattson. Gacek timely appeals the district court's adverse grant of summary judgment on both claims.

-4-

## II. DISCUSSION

We review a grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). "Summary judgment is proper if the record shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). The nonmoving party may not rest upon mere allegations or denials, but instead must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

### A. Retaliation under 42 U.S.C. § 1981

Gacek contends that Owens & Minor and Johnson retaliated against him for giving deposition testimony that aided Tewolde in Tewolde's racial discrimination suit. Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." A non-minority individual such as Gacek can bring a claim under § 1981 if he is discriminated or retaliated against for attempting to "vindicate the rights of minorities protected by" § 1981, because allowing such discrimination or retaliation to stand unchallenged "would give impetus to the perpetuation of racial restrictions." *See Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (addressing a similar claim under 42 U.S.C. § 1982).

Section 1981 claims are analyzed under the same framework as Title VII claims. *Lake*, 596 F.3d at 873 n.2. Under that framework, if the plaintiff can establish a *prima facie* retaliation case, the defendant must provide a legitimate, nondiscriminatory reason for its decision. *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006). If the defendant does so, the burden

then shifts back to the plaintiff to show that the proffered reason was merely a pretext for discrimination. *Id.*

The elements of a *prima facie* case of retaliation are that "(1) [the plaintiff] engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Id.* (quoting *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734, 739 (8th Cir. 2005)). As an initial matter, we note that while Gacek's deposition testimony on behalf of Tewolde likely would qualify as "protected activity" under Title VII, *see* 42 U.S.C. § 2000e-3(a) (prohibiting discrimination against an employee because he has "testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"), this does not establish that Gacek's deposition testimony qualifies as "protected activity" under § 1981. *See Welzel v. Bernstein*, 436 F. Supp. 2d 110, 118 (D.D.C. 2006) ("At a minimum, courts agree that an act of retaliation for engaging in activity protected by Title VII 'does not give rise to a claim for retaliation that is cognizable under § 1981 unless that activity was also protected by § 1981.'" (quoting *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998))). We need not decide the issue of whether Gacek's deposition testimony qualifies as "protected activity" for § 1981 purposes, however, because even assuming for purposes of argument that Gacek presented a *prima facie* case of retaliation, Gacek's failure to produce any evidence of pretext dooms his claim.[3]

Owens & Minor's proffered legitimate reason for Gacek's termination was Gifford's conclusion that Gacek committed multiple "violations of company policies,

---

[3]Gacek also alleges that his termination was in retaliation for a series of complaints he filed with the Occupational Health and Safety Administration ("OSHA") against Owens & Minor and for his participation in the union. Because none of these additional activities bear even a remote connection to the rights of minorities "to make and enforce contracts," it is clear that they are not protected under § 1981.

-6-

including but not limited to creation of a hostile and intimidating work environment and engaging in unsafe work practices." Gacek contends that this reason is pretextual because other employees who violated the same policies were not terminated. *See Lake*, 596 F.3d at 874 ("A plaintiff may show pretext, among other ways, by showing that an employer . . . treated similarly-situated employees in a disparate manner."). In particular, Gacek relies on evidence that one employee was suspended for a day, rather than terminated from employment, for harassing other employees; two other employees who drove forklifts in a dangerous manner were cautioned and given a written warning, respectively, rather than terminated from employment; and another employee who unleashed a profane tirade and attempted to initiate a fight received only a final written warning. However, the comparators cited by Gacek involve discipline for single incidents of harassment or single safety infractions, while Gacek's employment was terminated for accumulating multiple violations of company policy. "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness" to the plaintiff's conduct. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005) (quotation omitted), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). Because none of the proffered single incidents is of comparable seriousness to the litany of violations accumulated by Gacek, the purported evidence of disparate treatment fails to meet the "rigorous" test at the pretext stage for determining whether employees who were treated differently are similarly situated to the plaintiff. *See id.*

Gacek presented no evidence from which a jury could conclude that Owens & Minor's proffered legitimate reason for his termination was pretextual. Accordingly, summary judgment on Gacek's § 1981 retaliation claim was appropriate.

**B.      Defamation**

Gacek contends that Mattson defamed him by telling other employees that Gacek caused Showers's death. Under Minnesota law, "[o]nly statements that present or imply the existence of fact that can be proven true or false are actionable" in defamation. *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 308 (Minn. Ct. App. 2001). "Thus, if it is plain that the speaker is expressing a 'subjective view, an interpretation, a theory, conjecture, or surmise,' rather than claiming to be in possession of 'objectively verifiable facts,' the statement is not actionable." *Id.* (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

It is undisputed that Mattson told other employees that Gacek's complaint "pushed Showers over the edge" and was "the straw that broke the camel's back," and that Gacek "was the reason for Bill's death."[4]  None of these statements, however, express "objectively verifiable facts" about Showers's decision process. *See Schlieman*, 637 N.W.2d at 308 (quoting *Haynes*, 8 F.3d at 1227). Rather, they express Mattson's "theory" or "surmise" as to Showers's motives in taking his own life. *Id.* The *Schlieman* court's reliance on *Haynes* indicates that Minnesota follows the principle that "anyone is entitled to speculate on a person's motives from the known facts of his behavior." *Haynes*, 8 F.3d at 1227 (holding that an author's statement that the plaintiff decided to abandon one woman for another based on financial reasons

---

[4]Gacek also claims that Mattson told other employees that Gacek "killed" Showers.  However, there is no evidence Mattson publicized such a statement. Instead, it was Gacek who stated "what is this I hear you have been telling people I killed Bill Showers?" to a large audience, and Mattson merely responded, "Is that so hard to believe?"  Because it was Gacek himself, not Mattson, who publicized the allegedly defamatory statement, it is not actionable in defamation. *See Nw. Airlines, Inc. v. Friday*, 617 N.W.2d 590, 594 (Minn. Ct. App. 2000) ("The 'publication' of a defamatory statement . . . require[s] . . . the act of the alleged defamer in making the statement.").

was not actionable in defamation because it did not express "objectively verifiable facts").

Because Gacek's defamation claim is not premised on statements that "present or imply the existence of fact that can be proven true or false," *Schlieman*, 637 N.W.2d at 308, summary judgment was appropriate on that claim as well.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendants on each of Gacek's claims.

_____