# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1556
_____

Michael Young

*Plaintiff - Appellant*

v.

Builders Steel Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: February 12, 2014
Filed: June 9, 2014
_____

Before RILEY, Chief Judge, LOKEN and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

Michael Young brought this employment discrimination case claiming race discrimination and retaliation against his former employer Builders Steel Company

("Builders Steel").  The district court[1] granted summary judgment to Builders Steel on both claims.  Young now appeals.  We affirm.

I

Young, an African-American male, was employed with Builders Steel for twenty-six years.  Builders Steel is a structural steel fabricator and constructor operating in Kansas City, Missouri.  Until major lay-offs in 2011, Builders Steel employed about twenty-three people in its Kansas City shop.  From 2009 until his employment ended in May of 2011, Young was the only African-American employee of Builders Steel.

Young was a member of Local Union No. 520 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("the Union").  Some other, but not all, employees at Builders Steel were members of the Union.  The Union and Builders Steel executed contracts every three years; those contracts governed the working conditions of the union-members and the relationship between the Union and Builders Steel.  Two such agreements are relevant to this appeal, the 2005 Union Agreement and the 2008 Union Agreement ("the Union Agreements").  The 2005 and 2008 Union Agreements are similar in all relevant aspects.  The Union Agreements divided the shop employees into separate job classifications and assigned each job classification a "Wage Group."  The Union Agreements state:

> Each of the Company's employees shall be classified in accordance within the hereinafter mentioned classification which covers the class of work in which he is employed by the Company . . . [E]ach employee shall be paid within the wage range, if applicable to the classification,

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

-2-

but not less than the minimum hourly wage rate set forth . . . for the classification in which such employee is included or classified.

Aplt. Add. at 23, 41. Before being laid-off, Young was in Wage Group 3. Pursuant to the Union Agreements, Wage Group 3 contains three different job classifications: Welder A, Burner A, and Maintenance/Machine Operator A.

The Union Agreements contain provisions providing seniority status to long-serving workers. The Union Agreements provide "in all cases of increase or decrease in forces, the following factors will be taken into consideration: (1) length of continuous service, (2) ability, and (3) experience. Ability and experience being equal, preference shall be given the employee with the greatest length of continuous service." Aplt. Add. at 29-30, 47-48.

Young began working for Builders Steel in 1985 as a "Helper" in the production department, which is commonly referred to as "the shop." In November 1992, Young was promoted to the position of "Layerout/Fitter Welder A," which was assigned to Wage Group 1A. In January 2007, Young requested to "bid down" to the position of Burner A, which he claims was done on the request of Builders Steel. "Bidding down" refers to an employee requesting a transfer to a lower-classified job position. Burner A was assigned to Wage Group 3 in the Union Agreements. Young was transferred down to Burner A and his rate of pay was reduced from $17.58 per hour to $16.47 per hour. At the time of his "bid down," Young was not a certified welder, and was therefore not qualified to be a Welder A, but there is no certification or machine qualification needed to be qualified as a Burner A. Young claims Builders Steel promised Young a pay-raise back to his original hourly rate before Young bid down. Young did not receive any pay-raise after bidding down.

A round of layoffs ensued in October 2009, because of a decreased demand for business, but those layoffs did not impact Young.

-3-

Young has filed a number of complaints about Builders Steel asserting race discrimination claims regarding the bidding down process and Builders Steel's subsequent failure to increase Young's wage. On March 2, 2009, Young filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"). Young filed a second Charge of Discrimination on October 14, 2009. On March 15, 2010, Young filed a lawsuit against Builders Steel in the Circuit Court of Jackson County, Missouri. On September 13, 2010, Young filed a grievance with Builders Steel again asserting many of the same allegations filed in state court.

On May 27, 2011, Builders Steel laid off twelve employees in the shop, including Young, due to the decline in available work. Young was the most senior person laid off and was the only employee classified as Burner A to be laid off. The parties contest how many employees were retained after the May 27, 2011, layoffs. According to Builders Steel, employees with the most skills were retained and Young was qualified only to be a Burner A, but not a Welder A or a Maintenance/Machine Operator A (the other Wage Group 3 jobs). However, Builders Steel claims any person classified as Welder A or Maintenance/Machine Operator A is necessarily qualified to perform the job duties of, and could be qualified as, a Burner A.

Later, two workers who had been laid off were called back to work, each of whom had less seniority than Young, but Young was not called back. Those two workers had higher job classifications than Young. One was a "Group Lead" and "Machine Operator A" and the other was a "Material Handler." Young does not claim he was qualified to perform any of these jobs.

On February 29, 2012, Young commenced this lawsuit in the United States District Court for the Western District of Missouri, alleging discrimination and

retaliation in violation of 42 U.S.C. § 1981. Builders Steel moved for summary judgment on both of Young's claims, which the district court granted. Young now appeals.

On appeal, Young argues the district court improperly granted summary judgment because genuine issues of material fact exist and the district court erroneously weighed the evidence and failed to view the evidence in the light most favorable to Young. Young specifically appeals two issues: (1) whether Young presented sufficient evidence to establish a prima facie case of race discrimination; and (2) whether Young presented sufficient evidence to establish a prima facia case of retaliation for opposing race discrimination.

II

"We review a district court's decision to grant a motion for summary judgment *de novo*, applying the same standards for summary judgment as the district court." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment motions, the burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party. Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012). The non-moving party must substantiate his allegations by "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007) (quotation and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

A

To survive a motion for summary judgment on the race discrimination claim, Young must either "present admissible evidence directly indicating unlawful discrimination," or alternatively, Young could create "an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009) (internal quotation marks and citations omitted). "To prove intentional discrimination through direct proof, a plaintiff must establish 'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012) (quoting Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003)). Because Young did not present direct evidence of race discrimination, we analyze his claim under the McDonnell Douglas burden-shifting framework. See Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 792 (8th Cir. 2011).

Under the McDonnell Douglas framework, a presumption of discrimination is created when the plaintiff meets his burden of establishing a prima facie case of employment discrimination. Davis, 685 F.3d at 681. To establish a prima facie case for race discrimination, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." Gibson, 670 F.3d at 853-54 (internal quotation omitted). Once a plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Davis, 685 F.3d at 681. If the employer meets its burden, the

-6-

presumption of discrimination disappears, and plaintiff is required to prove the proffered justification is merely a pretext for discrimination. Id.

The parties do not contest Young is a member of a protected class, he met Builders Steel's legitimate expectation, and he suffered an adverse employment action. The parties do contest whether Young has established circumstances giving rise to an inference of discrimination. Although evidence of pretext is normally considered at the last step of the McDonnell Douglas analysis, pretext can also satisfy the inference-of-discrimination element of the prima-facie case. Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010). At the inference-of-discrimination stage, "[a] plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." Id. Young argues he can show an inference of discrimination in three ways: (1) by showing similarly situated persons were treated more favorably; (2) by showing Builders Steel failed to follow its own policy; and (3) by showing Builder Steel's explanation is unworthy of credence.

Young first argues similarly-situated persons were treated more favorably. For such a claim, Young must show the employees were "similarly situated in all relevant respects." Chappel v. Bilco Co., 675 F.3d 1110, 1119 (8th Cir. 2012); see also Riser v. Target Corp., 458 F.3d 817, 822 (8th Cir. 2006) (determining the plaintiff's co-workers were not similarly situated because, among other things, the co-workers had different job duties and job positions). Even though other employees were in Wage Group 3, there were no other employees who were classified as Burner A. The Wage Groups were a form of union negotiation and organization to systemize pay, but were not necessarily linked to similar jobs. Members of Wage Group 3 performed different jobs and required different types of certifications and different knowledge to perform those jobs. Young cannot show he was similarly situated "in all relevant respects"

to any of the other Wage Group 3 employees because he cannot show he could perform their jobs.  See Chappel, 675 F.3d at 1119.

Young next argues Builders Steel failed to follow its own policy, yet Young has failed to show Builders Steel did, in fact, deviate from stated policy.  The Union Agreements did not require layoffs to happen by seniority, but rather indicated when, out of two otherwise identical employees in aptitude and skill, one needed to be laid-off, the one with less seniority would be the one to suffer the layoff.  Builders Steel did not breach the Union Agreements or any other policy in laying off Young and keeping less-senior but more skilled and versatile workers.

Finally, Young argues Builders Steel proffered false explanations and lists four untruths he believes Builders Steel propagated:  (1) Young was not promised a pay raise after his voluntary demotion; (2) the October 2009 layoff was based on job classification and not just seniority; (3) the May 2011 layoff was based on job classification to enable most efficient continued operations; and (4) two employees called back to work in October 2011, worked in job classifications higher than Young. Regarding whether Young was promised a raise after his voluntary demotion, even if a question of fact remains on this issue, it is insufficient to create an inference of discrimination because the demotion was voluntary and occurred years before the layoff.  Additionally,  Young cannot show any casual connection or pretext regarding the failure to increase his pay.  See Davenport v. Riverview Gardens Sch. Dist., 30 F.3d 940, 945 (8th Cir. 1994) (affirming summary judgment on race discrimination claims where "plaintiff presented no such evidence other than his own unsubstantiated allegations in deposition[,]" and concluding that "[i]n light of plaintiff's failure to adduce any independent evidence to substantiate his disparate treatment claim, we agree with the district court that there is no genuine issue of fact on the issue of pretext . . . .") (internal citation omitted).  Young's additional claims fail because the claims are based on the flawed argument that all jobs in Wage Group

3 were the same; however, the evidence, even in the light most favorable to Young, shows all Wage Group 3 jobs are not the same.

Young is therefore unable to show a prima facie case of discrimination because he has failed to show circumstances which would give rise to an inference of discrimination. Because Young has failed to show a prima facie case of discrimination, we need not engage in the McDonnell Douglas burden-shifting analysis to affirm the grant of summary judgment to defendants.

B

To survive a motion for summary judgment on a retaliation claim, Young must show a prima facie case of retaliation. To establish a prima facie case of retaliation, a plaintiff must show "that (1) [he] engaged in statutorily protected activity; (2) an adverse employment action was taken against him . . . ; and (3) a causal connection exists between the two events." Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1146 (8th Cir. 2012) (quotation and citation omitted). If a plaintiff can establish a prima facie retaliation case, the defendant must provide a legitimate, nondiscriminatory reason for its decision. Davis, 685 F.3d at 684. If the defendant does so, the burden then shifts back to the plaintiff to show that the proffered reason was merely a pretext for discrimination. Id.

Young established he engaged in a statutorily protected activity by filing administrative charges and lawsuits against Builders Steel. Young also established adverse employment action was taken against him when Young was laid off in May 2011. See Gacek, 666 F.3d at 1146. However, Young has failed to demonstrate the protected conduct had a casual connection to the adverse actions taken against him. Young again argues three pieces of evidence would allow a jury to infer retaliation, (1) evidence similarly situated employees were more favorably treated; (2) evidence Builders Steel failed to follow its own policies; and (3) evidence Builders Steel's

proffered explanations are unworthy of belief. For the same reasons these arguments fail to show discrimination, they also fail to show retaliation. See supra, at 7-8. Young has failed to show direct or inferential evidence Builders Steel engaged in retaliation and we affirm the grant of summary judgment to defendants on Young's retaliation claim.

III

Accordingly, we affirm the judgment.

_____

-10-