# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2077/3043

_____

| | |
|---|---|
| Cathy Burkhart, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| | *  Appeals from the United States |
| v. | *  District Court for the Eastern |
| | *  District of Arkansas. |
| American Railcar Industries, Inc., | * |
| | * |
| Defendant - Appellee. | * |

_____

Submitted: April 16, 2010
Filed:  May 10, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Cathy Burkhart brought this action against her former employer American Railcar Industries, Inc. (ARI), alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. § 16-123-101 et seq.  She also alleged the state tort of outrage.  The district court[1] granted summary judgment to ARI on all of Burkhart's claims.  We affirm.

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

I.

We review a grant of summary judgment de novo, considering the facts in the light most favorable to Burkhart, the nonmoving party, and affirm if she did not produce sufficient evidence from which a reasonable factfinder could infer discrimination. See Sutherland v. Mo. Dept. of Corr., 580 F.3d 748, 750 (8th Cir. 2009); Fed.R.Civ.P. 56(c). Burkhart began work in 2000 as a purchasing agent for ARI, a railcar and tank car manufacturing company. A few years later plant manager Mike Sowards asked her to move to the material control department, which was overseen by Julie Harris. Several months after Burkhart's transfer, Harris left the company and was replaced by Bill Allen. Brenda Mobley, one of Allen's subordinates, was Burkhart's direct supervisor.

Although Burkhart contends that she did her job well, record evidence shows that she developed an extensive written disciplinary record while in the material control department. In March 2003 Julie Harris gave Burkhart a written warning about her failure to arrive promptly, noting that she "has been told numerous times about her tardiness." Burkhart accumulated at least nine subsequent written citations. One involved $40,712 in an inventory adjustment that had to be reversed.

Allen offered Burkhart time off to look for another job in November 2003 and warned her in January 2004 that she had "until the end of [the] month to show improvement in her work" or face discharge. When Burkhart received a pay increase in November 2004, Allen met with her to clarify that it was not merit based and that he was "still not satisfied with her overall job performance." Burkhart was reprimanded with other material control employees in May 2005 for what the plant manager described as "unacceptable . . . repeated mistakes."

In August 2006 Burkhart was again disciplined for alleged performance deficiencies. According to ARI, Burkhart had not properly inventoried the material

for an order of tank cars which resulted in an accounting error of $17,072. She was suspended for one day. In October 2006 the material control department conducted an annual inventory in which there was approximately $500,000 worth of unaccounted material. Burkhart attributed the error to another employee's faulty accounting mechanism and Mobley's instruction to ignore certain accounting errors. Burkhart also claimed that ARI had not allowed her sufficient overtime hours prior to inventory day and that she was not present for the final count approval. Mobley testified that while the 2006 inventory error was not solely Burkhart's responsibility, the "highest dollar" inventory problems were her fault. Following a five day suspension Burkhart was fired.

According to Burkhart, the August 2006 disciplinary action and her subsequent termination were retaliation for a complaint of sexual harassment by Bill Allen she brought in March 2006. Burkhart testified that she frequently saw images of "every type of sexual act that you can imagine" on Allen's computer screen before he cleared them. Mobley also testified that she saw Allen viewing pornography "probably daily." Allen sometimes shared sexually explicit images with his coworkers. Every day he sent dozens of emails unrelated to business to other employees, some of which had sexual content. For example, Allen forwarded an email message to Burkhart and other API employees depicting a woman in underwear with a lobster hanging from her nipples who had experienced "intense chest pains." On March 16, 2006, Allen sent an email titled "Why Women Are Crabby," a digression on women's sexual development. According to his email, it began with "tender, blooming buds" in preadolescence and continued into the "voracious sexual prime" of the early forties.

Allen once brought Burkhart into his office to show her an email with an image of female bicycle riders wearing "thong bikini pants" and their "buttocks jiggl[ing] up and down when he played the email." Once when Burkhart was searching in Allen's office for a computer disk with work related information, she opened a disk on his desk only to find photographs of a woman in underwear in sexually provocative poses.

-3-

The disk also contained a series of email exchanges between Allen and the woman's son who apparently had taken the photographs. In these messages Allen encouraged the son to have sex with his own mother. In early 2006, Burkhart was taping a mailing box on the floor of Allen's office when he remarked that she "looked good on [her] knees." Burkhart alleges that Allen's actions created a hostile work environment based on sex.

The human resources department learned of Allen's inappropriate behavior as early as October 2005. Allen was warned to stop viewing pornography and sending "explicit" emails at work or face termination. Burkhart complained about Allen to Mobley. In March 2006 she also complained to human resources manager Dean Inman about the "Why Women Are Crabby" email. Inman discussed the email with Allen and Burkhart, concluded that it was pornographic, and suspended Allen for five days with pay. Inman warned again that he would be terminated if he continued to send sexually charged emails. Allen's internet access was cut off. Inman also recommended that he seek treatment for his pornography habit although it was not required.

After Allen's suspension, Burkhart received no further non work emails or offensive comments from him. She alleges, however, that she was "ostracized" because of her complaint. Other employees exhibited a "standoff attitude" towards her, and plant manager Sowards no longer called her by a nickname. Allen ceased speaking to her, and Burkhart was fired after her inventory problems in October 2006.

Burkhart filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on December 5, 2006, nearly nine months after she received her last offensive email from Allen. She subsequently sued for sexual harassment and retaliation in violation of Title VII and ACRA, as well as state law outrage. The district court granted summary judgment to ARI on Burkhart's federal claims and dismissed her three state claims without prejudice. See Labickas v. Ark.

State Univ., 78 F.3d 333, 334 (8th Cir. 1995) (dismissal of pendent state law claims without prejudice within discretion of district court). Burkhart then filed suit in state court on her remaining state claims. When Burkhart alleged damages greater than those required for federal diversity jurisdiction, ARI removed the action back to federal district court. In a supplemental order the district court granted ARI summary judgment on the state claims but ordered it to pay Burkhart's filing fees for the state action and her second appeal to this court. Her appeals have been consolidated. Burkhart appeals both summary judgment orders.

## II.

The district court concluded that ARI was entitled to summary judgment on Burkhart's sexual harassment claims because they had been untimely filed. Title VII prohibits disparate treatment based on sex, including harassment that creates a hostile work environment, but a Title VII charge must be filed with the EEOC within 180 days after the alleged discrimination occurred. 42 U.S.C. § 2000e-5(e)(1).[2] Burkhart filed her EEOC charge on December 5, 2006, far more than 180 days after Allen's last offensive email to her. Burkhart does not allege sexual harassment acts within the statutory period (after June 5, 2006). Her federal claim for sexual harassment is therefore time barred. See Holland v. Sam's Club, 487 F.3d 641, 643-44 (8th Cir. 2007).

ACRA's statute of limitations for sex discrimination is either one year after the alleged employment discrimination occurred or within ninety days of receiving a "Right to Sue" letter from the EEOC, whichever is later. Ark. Code Ann. § 16-123-107(c)(3). Burkhart filed this action on December 26, 2007, more than one

---

[2]The statute of limitations is extended to 300 days if the charging party "institute[s] proceedings with a State or local agency with authority to grant or seek relief" from unlawful employment practices. Id. Arkansas does not have such an agency. Shempert v. Harwick Chem. Corp., 151 F.3d 793, 796 n.3 (8th Cir. 1998).

year after the last date of alleged sexual harassment. Because her EEOC charge alleging sexual harassment was untimely filed, Burkhart cannot rely on it to support the timeliness of her ACRA harassment claim. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 489-90 (8th Cir. 2002).

Burkhart urges us to apply the continuing violation doctrine to save her sexual harassment claims. In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court concluded that an employee may sue for a hostile work environment based on actions occurring outside the statutory period "so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105. Burkhart produced no evidence that the sexually explicit emails, comments, or pornographic viewings continued after Allen's five day suspension in March 2006. In fact Allen stopped speaking to Burkhart after his suspension, and his internet access was severed. Burkhart's allegations which fell within the statutory period complained about shunning from her coworkers, her August 2006 suspension, and her termination. These allegations are not about continuing sexual harassment, however, but rather about retaliation for her complaint about Allen.

Retaliation is a cause of action under Title VII separate and distinct from sex discrimination. Compare 42 U.S.C.§ 2000e-2(a) (prohibiting sex discrimination) with id. § 2000e-3(a) (prohibiting retaliation); see also Norbeck v. Basin Elec. Power Coop., 215 F.3d 848, 852 (8th Cir. 2000) (42 U.S.C. § 2000e-2(m) relief applicable to Title VII discrimination claims does not extend to retaliation claims). ACRA likewise distinguishes between sex discrimination and retaliation. Compare Ark. Code. Ann. § 16-123-107(a)(1) with id. § 16-123-108.

All of the actions about which Burkhart complains that occurred within 180 days of her filing are alleged to have been retaliation for complaining to the human resources manager, not harassment based on sex. Burkhart's sexual harassment allegations may be considered as "background evidence" in support of her retaliation

claims. Morgan, 536 U.S. at 113. We may not consider the merits of her sexual harassment claims, however, because the incidents she cites to support a hostile work environment claim based on sex are time barred.

Burkhart's retaliation claims are subject to the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Logan v. Liberty Healthcare Corp., 416 F.3d 877, 880 (8th Cir. 2005). We analyze Burkhart's Title VII and ACRA retaliation claims in the same manner. McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 864 (8th Cir. 2009). To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. Id. If Burkhart were to establish a prima facie case and ARI then proffered a legitimate, non-retaliatory reason for the action it took against her, she would have to present evidence that "(1) creates a question of fact as to whether [ARI's] proffered reason was pretextual and (2) creates a reasonable inference that [ARI] acted in retaliation." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002).

The first two elements of Burkhart's prima facie case are not in dispute, but no reasonable factfinder could infer a causal connection between her complaint and the disciplinary action that followed because she had an extensive history of poor performance preceding the challenged employment actions. "Evidence of an employer's concerns about an employee's performance before the employee's protected activity undercuts a finding of causation." Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 504 (8th Cir.2005). Burkhart argues that her discipline by Allen showed retaliatory intent, but the August 2006 disciplinary action was instigated by Mobley. Her pre complaint disciplinary record also includes poor reviews from Allen's predecessor, Julie Harris, and from at least two other managerial level employees.

Burkhart was fired seven months after her March 2006 complaint. A "gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive[,]" Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 633 (8th Cir. 2005), and we have previously found a seven month period between the protected activity and the adverse action "[in]sufficiently contemporaneous" to indicate a causal connection. Littleton v. Pilot Travel Ctrs., LLC, 568 F.3d 641, 645 (8th Cir. 2009). Burkhart argues that her treatment by coworkers following her complaint was an adverse action; however, "petty slights or minor annoyances[,]" such as the "standoff attitude" of Burkhart's colleagues and the fact that Sowards ceased calling her by a nickname, are not actionable retaliation. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Burkhart attempts to use her disciplinary record to her advantage, arguing that ARI consistently accused her of poor performance but only suspended and terminated her after her complaint of sexual harassment. See Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1079-80 (8th Cir. 2005) (reversing adverse summary judgment on retaliation claim where employee had not been disciplined or informed about complaints before he engaged in protected activity but was later demoted for the same acts). Unlike in Eliserio, Burkhart's pre complaint errors were well documented, and she had been previously warned that she could be fired if they continued. The 2006 inventory mistake resulting in her termination was arguably her worst and costliest error. That ARI forgave Burkhart's earlier errors did not prohibit it from terminating her when the mistakes continued and worsened. Even if Burkhart could establish a prima facie retaliation case, no reasonable factfinder could conclude that ARI's proffered reason for firing her was pretextual as required in the McDonnell Douglas framework. See Logan, 416 F.3d at 880.

Finally, Burkhart appeals the district court's grant of summary judgment to ARI on her state law claim of outrage. That claim requires proof that: (1) the defendant intended to inflict emotional distress, (2) "extreme and outrageous" conduct "beyond

all possible bounds of decency," (3) causation, and (4) emotional distress "so severe that no reasonable person could be expected to endure it."  Kiersey v. Jeffrey, 369 Ark. 220, 222 (2007) (quotations omitted).  Arkansas courts take a "narrow view" of the tort, id., and adopt an especially strict approach to outrage claims arising from employment relationships.  Seals v. Corr. Med. Servs., Inc., 473 F.Supp.2d 912, 925 (E.D.Ark. 2007).  The conduct Burkhart alleges cannot meet this high standard.

Accordingly, we affirm the judgments of the district court.

_____