# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1993

_____

Tabby Butler

*Plaintiff - Appellant*

v.

Crittenden County, Arkansas; R. E. (Dick) Busby, Crittenden County Sheriff, Individually & in Official Capacity; W. A. Wren, Chief Enforcement Officer, Crittenden County Sheriff's Department, Individually & in Official Capacity; Rodney Strong, Supervisor, Crittenden County Sheriff's Department, Individually & in Official Capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: January 17, 2013
Filed: March 5, 2013

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Tabby Butler is an African American woman who worked as a deputy jailer in the Crittenden County jail from 2000 until her employment was terminated in 2008.

Following her termination Butler filed claims against the county and its officials alleging unlawful suspension and discharge, sex discrimination, retaliation, violation of her procedural and substantive due process rights, and civil conspiracy, citing 42 U.S.C. §§ 1981, 1983, and 1985 and the Civil Rights Act of 1991. She also brought state law claims. Summary judgment was granted to the county and its officials after the district court[1] concluded that Butler had failed to show either race or sex discrimination or civil conspiracy. It declined to exercise supplemental jurisdiction over her state law claims. See 28 U.S.C. § 1367(c)(3). Butler appeals, and we affirm.

I.

Butler was hired in December 2000 as a deputy jailer at the Crittenden County jail to guard both juvenile and adult inmates. Beginning in 2008 Butler received several disciplinary warnings. A March 2008 memorandum charged her with being tardy a total of nine times since February of that year and informed her that there would "be no future warnings concerning this tardy issue."

Rodney Strong became Butler's supervisor in August 2008. According to Butler, Strong began harassing her by "asking [her] to go on dates," "trying to give [her] money," and "invit[ing] [her] to his house for dinner." Butler estimated that Strong invited her out between thirty and forty times. On September 19, Butler was written up for being insubordinate to Strong; she refused to sign the disciplinary report. Later that month Strong and another officer visited a hospital where a juvenile inmate was being treated, and Butler documented the visit in the jail's log book. The next day chief jailer Theresa Bonner called Butler to her office to inform her that she was being suspended for insubordination, unsatisfactory behavior, and "writing statements that are detrimental about [her] supervisor in the . . . log book."

---

[1] The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

On October 7, Butler wrote a letter to Bonner and a jail administrator stating:

Rodney Strong has been making sexual advances toward me for approximately 3 months. He has asked me out on dates, offered money, questioned my personal/dating life, asked to touch my hair, offered to pay for my lunch, and invited me to his home for dinner. I have continually turned down these advances, because I am not interested in him. All of Strong's inappropriate and unwanted advances have made me uncomfortable in the work environment.

After meeting with Butler to discuss her complaint, Theresa Bonner and the jail administrator advised Strong to speak with Butler only regarding work matters and to stop complimenting her and offering to buy her lunch. Strong agreed with these restrictions but remained Butler's supervisor. Butler admits that Strong changed his conduct toward her after his meeting with Bonner and the jail administrator, but Butler nevertheless gave a copy of her October letter regarding Strong to Sheriff Busby on November 17. Thereafter Strong was relocated to another part of the jail so that he no longer supervised Butler.

In December Butler had an altercation with a coworker. When the chief jailer reprimanded Butler for her tendency to lash out with harsh words, Butler replied that she "doesn't fool with devilish people." Butler also continued to be tardy for work. She was tardy more than sixty times in 2008, and by her own admission was written up for tardiness "a number of times." Thereafter on December 26, she was suspended for two days for "chronic tardiness."

In a disciplinary statement, Butler's supervisor wrote that on Christmas day Butler "was 30 min[utes] late and she did not call and she has been talked to over and over again about getting to work on time, I have been lenient over and over but could no longer due to the fact that [this] is an ongoing problem." Butler was terminated on December 30. Chief jailer Bonner testified that Butler was terminated because she

failed to respect the chain of command, was disrespectful to superiors, and accused others of being evil, claiming the jail was full of evil spirits.

Butler filed a claim with the EEOC for sexual harassment and retaliation. She received a right to sue letter on September 25, 2009 which permitted her to file a federal lawsuit against the county and its officials within 90 days of her receipt of the notice. More than nine months later, on July 22, 2010, Butler filed her complaint against Crittenden County, sheriff Busby, Strong, and Chief Enforcement Officer W. A. Wren. She alleged that they had violated 42 U.S.C. §§ 1981, 1983, and 1985, the Civil Rights Act of 1991, and the Arkansas Civil Rights Act of 1993. Butler stated in particular that the county and its officials had unlawfully suspended and terminated her based on her gender and her complaints about sexual harassment. She also alleged that they had conspired to deprive her of federally protected rights and state property rights.

The district court granted summary judgment to the county and its officials. It first noted that Butler's claims appeared to be time barred because she had not filed suit within 90 days of receiving her right to sue letter. It nonetheless proceeded to address her claims on the merits and concluded that Butler had failed to show race or gender discrimination under any of her theories. The district court also rejected Butler's civil conspiracy claims and declined to exercise jurisdiction over her state law claims.

Butler appeals, contending that the reasons given for her termination were pretexual and in retaliation for her complaints about Strong and her notation in the log book, that her termination was "evidence of . . . sexual and racial discrimination," that her "rights of freedom of speech and equal protection" under the First and Fourteenth Amendments had been denied, and that Strong's conduct amounted to quid

pro quo sexual harassment.[2]  The county and its officials contend that all of Butler's claims are time barred because she did not exhaust Title VII's requirements.

## II.

We review de novo the district court's grant of summary judgment to the county and its officials, viewing the facts in the light most favorable to Butler and giving her the benefit of all reasonable inferences from the record.  Minn. ex rel. N. Pac. Ctr., Inc. v. BNSF R.R. Co., 686 F.3d 567, 571 (8th Cir. 2012).  Summary judgment is appropriate only where there is no genuine dispute "as to any material fact and the movant is entitled to judgment as a matter of law."  Id.

We first address the district court's conclusion that Butler's claims may be time barred because she did not file suit within 90 days of receiving her right to sue letter. The district court relied on language in Tyler v. University of Arkansas Board of Treasurers, 628 F.3d 980 (8th Cir. 2011), to conclude that Title VII's exhaustion requirement applies equally to Butler's § 1983 discrimination claims.

We disagree that Butler's claims are time barred under Tyler.  The plaintiff in Tyler had received a right to sue letter from the EEOC based on his allegations of retaliation and race discrimination, but in his complaint he raised a new claim for sex discrimination under § 1983 as well.  Id. at 989.  Although we spoke there about Tyler failing to preserve his § 1983 sex discrimination claim because "[a]s a Title VII plaintiff, [he] was required to exhaust his administrative remedies . . . before bringing a formal action" under § 1983, id., we have since made clear that the exhaustion requirement applies only to Title VII plaintiffs like Tyler, while "an employment

---

[2] Butler does not identify the parts of the district court's order from which she appeals. Since she has not referred to her state law or civil conspiracy claims, we do not consider them here.  See Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 933 (8th Cir. 2011).

discrimination plaintiff asserting a <u>violation of a constitutional right</u> may bring suit under section 1983 alone, without having to plead concurrently a violation of Title VII and comply with the Act's procedural requirements," <u>Henley v. Brown</u>, 686 F.3d 634, 642–43 (8th Cir. 2012) (emphasis added). Since Butler's race and gender discrimination claims under § 1983 are based on alleged constitutional violations, she was not required to comply with Title VII's procedural requirements to maintain them.

Turning to Butler's substantive claims, she first contends that her suspension and termination amounted to quid pro quo harassment under § 1983. To prove quid pro quo harassment, Butler must present evidence demonstrating that "submission of unwelcome advances was an express or implied condition for receiving job benefits or [that] refusal to submit resulted in a tangible job detriment." <u>Newton v. Cadwell Labs.</u>, 156 F.3d 880, 882 (8th Cir. 1998). The district court concluded that Butler had suffered tangible job detriments in the form of her suspension and termination, but it determined that Butler had failed to show that her rejection of Strong's advances caused that detriment. We agree. Butler was suspended before complaining about Strong's behavior, which indicates that her suspension was not caused by that complaint. There is no dispute that Strong stopped bothering Butler after October 6, and she was not terminated until December 30. In this case, "the interval . . . between the complaint and [Butler's] termination so dilutes any inference of causation that . . . the temporal connection could not justify a finding in [Butler's] favor on the matter of causal link." <u>Kipp v. Mo. Highway & Transp. Comm'n</u>, 280 F.3d 893, 897 (8th Cir. 2002).

Butler next asserts a claim for hostile work environment under § 1983. To establish a prima facie hostile work environment claim for harassment, Butler must prove that (1) she was a member of a protected group; (2) unwelcome harassment occurred; (3) there was a causal nexus between the harassment and her membership in a protected group; and (4) the harassment affected a term, condition, or privilege

of employment. Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008). Butler must show that the jail was subjectively and objectively "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." Vajdl v. Mesabi Acad. Of KidsPeace, Inc., 484 F.3d 546, 550 (8th Cir. 2007) (quotation omitted).

The district court correctly determined that Butler could not establish a prima facie case of a hostile work environment because she did not allege "sufficiently severe or pervasive" conduct. Vajdl, 484 F.3d at 550. Although there was evidence that Strong asked Butler on several dates, sought to touch her hair, and complimented her perfume, he never touched her inappropriately or engaged in "physically threatening or humiliating" conduct. Sheriff v. Midwest Health Partners, P.C., 619 F.3d 923, 930 (8th Cir. 2010). Moreover, he ceased his advances after jail administrators confronted him about Butler's complaint and later removed him from supervision over her. We conclude that in these circumstances Strong's acts did not rise to the level of a prima facie case of a hostile work environment.

Butler next argues that she suffered race and sex discrimination based on her suspension and termination. To succeed on a race or sex discrimination claim, Butler must show either direct evidence of discrimination or evidence that is sufficient to create an inference of discrimination under the McDonnell Douglas burden shifting framework. Young-Losee v. Graphic Packaging Int'l, Inc., 631 F.3d 909, 912 (8th Cir. 2011). Since Butler offers no direct evidence of discrimination, we consider her claims under the burden shifting framework. To create an inference of discrimination Butler must establish a prima facie case, which requires proof that she (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful sex or race discrimination. Wells v. SCI Mgmt., L.P., 469 F.3d 697, 700 (8th Cir. 2006). Only the fourth element is at issue here, which Butler may meet by showing more favorable

treatment of similarly situated employees outside the protected class. Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011).

Butler contends that other jail employees were treated differently from her, and that if "she had been a white woman, her complaints against Mr. Strong would have been resolved immediately with separation of the two in the work environment." She claims that another employee who alleged misconduct by Strong in a separate log was not suspended, and that other employees who had been regularly tardy to work were never terminated. She offers no evidence about the race or gender of the other employee who wrote in the separate log and no evidence that the writing in the separate log violated jail policy. See Hervey v. Cnty. of Koochinhing, 527 F.3d 711, 720–21 (8th Cir. 2008). Butler has similarly failed to show that any other employee with a similar tardiness record was not terminated. In her proffered list of employees with comparable disciplinary records, the most tardy employee had 26 tardies in 18 months, fewer than half of Butler's tardies in 2008. We conclude that Butler's allegations of different treatment are insufficient to establish a prima facie case of discrimination.

Butler next asserts a retaliation claim under § 1981 and a First Amendment claim under § 1983. Such claims are analyzed under a burden shifting framework which requires Butler to establish a prima facie case of retaliation by showing that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal connection existed between the two. Takele v. Mayo Clinic, 576 F.3d 834, 839 (8th Cir. 2009); Davison v. City of Minneapolis, Minn., 490 F.3d 648, 655 (8th Cir. 2007).

Butler contends that she was suspended and terminated for rejecting Strong's advances, writing in the jail log book, and filing a claim with the EEOC. The district court concluded that these facts did not reasonably state a claim of race discrimination on this record, and § 1981 does not encompass sex discrimination

claims. See DeGraffenreid v. Gen. Motors Assembly Div., 558 F.2d 480, 486 n.2 (8th Cir. 1977). The district court also correctly concluded that Butler could not sustain a First Amendment claim related to her notation in the log book because such entries are part of a jailer's "official responsibilities" and are thus not immunized under the First Amendment. See McGee v. Pub. Water Supply, Dist. No. 2, 471 F.3d 918, 919 (8th Cir. 2006). Butler also failed to establish the requisite causal relationship to show a violation of the First Amendment in respect to her EEOC charge and her complaints about Strong. Butler was suspended before filing her EEOC charge and before she complained about Strong's advances. She was also terminated almost three months after she complained and more than one month after Strong's removal as her supervisor.

Butler finally alleges that her Fourteenth Amendment rights "of due process and equal protection" were violated, but she does not articulate how the county and its officials violated those rights. This court "regularly decline[s] to consider cursory or summary arguments" unsupported by facts or legal authorities, United States v. Stuckey, 255 F.3d 528, 531 (8th Cir. 2001), and we thus will not consider Butler's Fourteenth Amendment claims here.

III.

Accordingly, we affirm the summary judgment in favor of the county and its officials.

_____

-9-