# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 13-2394

_____

Ellen Robinson

*Plaintiff - Appellant*

v.

American Red Cross

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 10, 2014
Filed: May 22, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge

Ellen Robinson is an African American woman who began working for the American Red Cross in February 2003. She has since filed race discrimination claims against the Red Cross under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Arkansas Civil Right Act of 1993 (ACRA), as well as federal age and gender discrimination claims, retaliation claims under Title VII and ACRA, and a

state claim of outrage. The district court[1] dismissed or granted summary judgment on all of Robinson's claims. She now appeals the grant of summary judgment to the Red Cross on her § 1981 and ACRA race discrimination claims, her Title VII race discrimination claims alleging events taking place before January 21, 2011, her retaliation claims, and her outrage claim. After careful examination of the record, we affirm.

## I.

Ellen Robinson is an African American woman who was hired as a phlebotomist technician by the Red Cross in February 2003. Promoted four times between 2004 and 2009, Robinson was a Collections Specialist II supervisor at the time she applied for an On the Job Instructor position in September 2010. Robinson was one of two finalists, but the job was given to the other finalist, a white man in his twenties. The Red Cross states that he was more qualified for the job than Robinson. During that same month, Robinson was given disciplinary counseling for having received four separate write ups in a single month. She also received a verbal warning that November for excessive unscheduled absences.

In July 2011, just two days after the Red Cross implemented a zero tolerance policy with respect to blood donor complaints, a donor complained that Robinson had exhibited rude and unprofessional behavior. After investigating the complaint and concluding it was valid, the Red Cross suspended Robinson and issued her a final written warning. At least two white Red Cross employees were also written up or suspended for blood donor complaints that summer.

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

That same July, Robinson applied for two additional positions—DOT Administrator and Administrative Assistant II. The first position required a commercial driver license which Robinson did not have. Red Cross policy also prevents it from hiring anyone for a new position who is on discipline status. A qualified applicant was hired for the DOT position and the other position was left unfilled. Robinson then filed a discrimination charge against the Red Cross with the EEOC during the month of July 2011.

Robinson received a verbal warning in June 2012 for two incidents described as insubordination and unprofessional behavior. The next month she received a written warning for allegedly screaming profanities in the blood donor room. The Red Cross also claims that she made false accusations the next month against two coworkers concerning an incident in which she allegedly refused to follow instructions from a superior. Robinson was suspended for this incident. According to the uncontroverted statement of the Red Cross, Robinson subsequently exhibited unprofessional behavior in September 2012 and created a hostile and stressful work environment which compromised service to blood donors. Following this incident, she was terminated on October 1, and her position was filled with an African American replacement. The Red Cross states that more than ten witnesses observed Robinson's conduct and that it also terminated at least ten white employees for behavioral issues between October 2010 and 2012.

Robinson alleged in her first charge filed with the EEOC in July 2011 that the Red Cross had not promoted or trained her because of her race, which was also the reason for her suspension and ultimate termination. The EEOC dismissed her charge for lack of cause on August 8, 2011. Robinson filed her original complaint in this case in the district court in October 2011. In that complaint she charged that the Red Cross violated Title VII when it failed to promote her because of her race. She amended the complaint the first time in November, adding a claim for age discrimination, which the district court dismissed. She filed a charge of retaliation

with the EEOC in October 2012, claiming that the Red Cross had terminated her for filing the July 2011 charge with the EEOC. The EEOC issued Robinson a right to sue letter on her retaliation charge. She then amended her district court complaint a second time in November 2012, claiming discrimination under Title VII , 42 U.S.C. § 1981, and ACRA, and retaliation under Title VII and ACRA. She also reasserted her dismissed age discrimination claim and added federal gender discrimination and state outrage claims.

The Red Cross filed a motion for summary judgment along with a statement of undisputed facts on April 18, 2013. The district court granted Robinson an extra week to file her opposition to the motion, extending the deadline until May 9. When the deadline passed without a response from Robinson, the Red Cross filed a request for a decision on its pending motion. Robinson emailed her response to the Red Cross' motion to chambers on May 14 and 15, and was directed to file the documents with the clerk of court, which she did on May 17. Although she submitted a responsive brief and exhibits, Robinson did not respond directly to the statement of undisputed facts submitted by the Red Cross.

Summary judgment was granted to the Red Cross on Robinson's age discrimination claim and her Title VII race discrimination claims alleging events taking place before January 21, 2011 on grounds that they were time barred. In its analysis of Robinson's remaining discrimination and retaliation claims under the burden shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), the district court concluded that she had failed to establish prima facie cases and it granted summary judgment on them to the Red Cross. The district court also dismissed Robinson's gender discrimination claim because she had failed to raise it in her original charge with the EEOC and granted summary judgment to the Red Cross on her outrage claim. Robinson appeals the grant of summary judgment on her race discrimination claims under § 1981 and ACRA, her Title VII race discrimination claims which survived dismissal, and her Title VII and ACRA retaliation and state outrage claims.

-4-

II.

We review de novo the district court's grant of summary judgment to the American Red Cross, viewing the facts in the light most favorable to Robinson and giving her the benefit of all reasonable inferences. Butler v. Crittenden Cnty., Ark., 708 F.3d 1044, 1048 (8th Cir. 2013). We may affirm only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. at 1049 (internal quotations omitted). Discrimination claims brought under Title VII and § 1981 are analyzed under the McDonnell Douglas burden shifting framework, id. at 1050, as are retaliation claims brought under Title VII and ACRA. McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 864 (8th Cir. 2009).

Robinson alleges that she was not promoted or trained, was suspended, and was terminated because of race discrimination. To succeed with her claims, Robinson must show "either direct evidence of discrimination or evidence . . . sufficient to create an inference of discrimination under the McDonnell Douglas burden shifting framework." Butler, 708 F.3d at 1050. Since Robinson has not offered any direct evidence of discrimination, she must establish a prima facie case of it by showing that "she (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful . . . race discrimination." Id.

Robinson asserts that her race was the determining factor in the Red Cross decision not to promote her to three positions: On the Job Instructor, DOT Administrator, and Administrative Assistant II. To create an inference that the decision not to promote her was based on unlawful race discrimination, Robinson must show that she was qualified for the promotion for which she applied and that it was given to a similarly situated employee who was not part of the protected class. See Allen v. Tobacco Superstore, Inc., 475 F.3d 931, 937 (8th Cir. 2007). Courts "may not second-guess employers' business decisions," however, and "employers are free to make employment decisions so long as they do not discriminate unlawfully."

Haigh v. Gelita USA, Inc., 632 F.3d 464, 471 (8th Cir. 2011) (internal quotation marks omitted). By not opposing the Red Cross motion for summary judgment on her claims that she was not promoted to the DOT Administrator and Administrative Assistant positions due to race discrimination, Robinson has waived those claims. See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009).

In her briefs and exhibits opposing summary judgment and supporting this appeal Robinson alleges that the candidate the Red Cross hired for the On the Job Instructor position was less qualified than she was. She also alleges that the Red Cross promotes white employees more frequently and rapidly than African Americans even though they do less work. Robinson has overlooked the local rules of the federal district court which treat as undisputed the statement of material facts made by the moving party "unless controverted by" the nonmoving party's "separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried." U.S.Dist.Ct.Rules Ark., LR 56.1(b)–(c). Robinson did not submit responses to the Red Cross statement of undisputed material facts. We therefore consider it to be undisputed that the candidate the Red Cross hired instead of Robinson was more qualified than she, and thus not similarly situated. The record also shows that the Red Cross promoted Robinson four times, suggesting that her race was not a factor in its employment decisions. We conclude that Robinson has not established a prima facie case of race discrimination based on the Red Cross decision not to promote her.

Robinson also alleges that the Red Cross failed to provide her with training because of her race. To establish that the alleged failure to train was an adverse employment action, Butler, 708 F.3d 1050, Robinson must show it caused her a "material employment disadvantage," such as termination, a cut in pay or benefits, or loss of future career prospects. Kerns v. Capital Graphics, 178 F.3d 1011, 1016 (8th Cir. 1999). Robinson claims that the organization's failure to train her caused delays in serving donors, resulting in customer dissatisfaction and loss of self esteem, and

that it made her a less competent applicant for promotions. Even when viewed in the light most favorable to Robinson, the record does not support an inference that donor dissatisfaction with her was caused by service delays. Although it is true that Robinson was turned down for three promotions, she has not provided any evidence that it was because of training the Red Cross denied her but provided to white employees. Robinson thus fails to establish a prima facie case of race discrimination based on the failure to train her.

Robinson finally alleges that the decisions to suspend and terminate her were the result of race discrimination. To establish a prima facie case that she was suspended or terminated because of her race, Robinson must show that she met her employer's legitimate expectations. Higgins v. Gonzales, 481 F.3d 578, 584 (8th Cir. 2007) (suspension), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc); Martinez v. W. W. Grainger, Inc., 664 F.3d 225, 230 (8th Cir. 2011) (termination). Robinson was suspended the first time in July 2011 following a donor complaint about her unprofessional behavior just days after the Red Cross instituted a "zero tolerance" policy with respect to donor complaints. She was suspended again in June 2012 after receiving a written warning for yelling profanities in the blood donor room and making false accusations against coworkers regarding an incident in which she refused to follow a superior's instructions. The Red Cross terminated Robinson in September 2012 for having created a hostile work environment which compromised service to blood donors. We conclude on this record that Robinson failed to meet her employer's legitimate expectations.

Even if Robinson were able to show she had met her employer's legitimate expectations, she would still have to show that similarly situated employees committed the same conduct but were treated differently. Higgins, 481 F.3d at 584; Martinez, 664 F.3d at 230. The Red Cross suspended or otherwise disciplined at least two white employees and terminated at least ten white employees at around the same time Robinson was suspended and terminated. It also filled her position with an African American replacement. Since Robinson has failed to establish a prima facie

case of race discrimination with respect to her suspension and termination, we conclude that the district court did not err in granting summary judgment to the Red Cross on her discrimination claims.

In her retaliation claim under Title VII and ACRA, Robinson alleges that she was terminated in October 2012 in retaliation for filing her July 2011 discrimination charge with the EEOC. Since Robinson does not allege direct evidence of retaliatory motive, she must first demonstrate that (1) she engaged in protected activity, (2) the Red Cross subsequently took materially adverse action against her, and (3) the materially adverse action was causally linked to her protected activity. Ellis v. Houston, 742 F.3d 307, 319 (8th Cir. 2014). By filing charges with the EEOC in July 2011 and October 2012, Robinson engaged in protected activity. Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011).

Robinson must demonstrate that her lack of promotion, suspension, and termination are causally linked to the filing of her first EEOC charge. She must thus show that her conduct was a "determinative—not merely motivating—factor" in the Red Cross actions. Id. at 985 (internal quotation marks omitted). Direct evidence of such causation is rarely available, but an inference of causation may be established through indirect evidence, such as the closeness in time between the protected and adverse actions. Id. at 986. The more time that elapses between the two events, however, the weaker the inference of causation. Id. Any inference of causation evaporates if the adverse action occurs months after the protected activity. Id. In such cases a plaintiff must present additional evidence of a causal link, which can include "escalating adverse and retaliatory action." Id. at 986–87 (internal quotation marks omitted).

Robinson claimed in her October 2012 retaliation charge that the Red Cross began to retaliate against her in June 2012, a year after she filed her July 2011 discrimination charge. The district court concluded that the nearly twelve months of elapsed time between the two events was too long to support an inference of

-8-

causation. Robinson argues that the district court erred in not counting as protected actions the original and amended complaints she filed in October and November 2011, as well as her attorney's appearance in court on her behalf in January 2012. She asserts that the six months of elapsed time between her attorney's appearance and June 2012 establishes causation. This argument fails, however, because a lapse of even just two months may by itself be too long to support an inference of retaliation. Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 616 (8th Cir. 2003).

Alternatively Robinson argues that the Red Cross first retaliated against her EEOC filing sometime before June 2012 with escalating adverse activity thereafter which included soliciting coworker comments about her behavior and requiring her to meet with a human resources manager about her job performance. These arguments fail because Robinson did not raise them in her administrative charge, Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 223 (8th Cir. 1994), or in the federal district court. Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 797 n.8 (8th Cir. 2011). Moreover, solicitation of coworker comments or required performance meetings have not been seen as adverse employment actions. There is also no evidence in the record showing that the decision makers at the Red Cross even knew that she had filed an EEOC charge, and Robinson herself testified that nothing had changed in how the organization treated her after she had done so. We thus conclude that Robinson has failed to raise a genuine issue of material fact to show a causal link between her protected activity and the adverse employment actions taken against her. Because she has not established a prima facie case of retaliation, the district court did not err in granting the Red Cross summary judgment on this claim.

We also conclude that the district court did not err in granting the Red Cross summary judgment on Robinson's outrage claim. Arkansas courts have adopted "an especially strict approach to outrage claims arising from employment relationships." Burkhart v. Am. Railcar Indust., Inc., 603 F.3d 472, 478 (8th Cir. 2010). Robinson must prove with "clear cut" evidence (1) the Red Cross' intent to inflict emotional

distress, (2) "extreme and outrageous" conduct "beyond all possible bounds of decency," (3) causation, and (4) emotional distress "so severe that no reasonable person could be expected to endure it." Id. (quoting Kiersey v. Jeffrey, 253 S.W.3d 438, 441 (Ark. 2007)). Robinson based her outrage claim on having been written up, watched, and "nit picked" by her employer. The district court concluded that no reasonable jury could conclude that this conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and we agree.

## III.

The undisputed facts in this case fail to establish a prima facie case of discrimination or retaliation under the McDonnell Douglas framework and entitle the Red Cross to summary judgment as a matter of law on Robinson's outrage claim. We therefore affirm the judgment of the district court.

_____