# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2316

_____

Catrina D. Blackwell

*Plaintiff - Appellant*

v.

Alliant Techsystems, Inc.

*Defendant*

Ron Baker, Individually and as Agent and Employee of Alliant Techsystems, Inc.;
David Bales, Individually and as Agent and Employee of Alliant Techsystems,
Inc.; Tracy Bradehoft, Individually and as Agent and Employee of Alliant
Techsystems, Inc.; Alliant Techsystems Operations, LLC

*Defendants - Appellees*

Division of Employment Security, State of Missouri

*Respondent*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 13, 2016
Filed: May 16, 2016

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Catrina Blackwell sued Alliant Techsystems Operations LLC (ATK) and several ATK employees for race, gender, and age discrimination after the company fired her for elbowing another employee in the back. The district court[1] granted summary judgment to the defendants, concluding that Blackwell had not demonstrated a prima facie case of discrimination and that ATK had a legitimate nondiscriminatory reason for terminating her. Blackwell now appeals, and we affirm.

I.

Blackwell, who is African American, was employed as a worker on an assembly line at ATK's ammunition plant in Lake City, Missouri. From 2004 to 2011 she received positive reviews and had a good record. Then, in August 2011 Blackwell had a verbal altercation with her coworker Michael Buie. Human resources manager Ron Baker investigated the incident and gave both employees a written warning. In November 2011 Blackwell and Buie had a second dispute. Blackwell alleged that Buie had rammed into her with his shoulder as they passed each other in the hallway. Baker again investigated. He concluded that the contact had been inadvertent and that Buie had not done anything improper after witnesses stated that Buie "barely brushed" or "bumped into" Blackwell.

In February 2012 Blackwell and her coworker Leona Yardley exchanged insults during an incident at work. Blackwell did not report it. Then, on February 17 Blackwell and Yardley were involved in a second incident. Yardley reported to ATK management that Blackwell had elbowed her in the back just after the start of their

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

shift on the assembly line. Jeff Peters, the supervisor of the line, reported the incident to human resources but told Yardley that he could not do anything without corroboration. Tyler Johnson later stepped forward as a witness and provided oral and written statements corroborating Yardley's accusations. In his signed written statement, Johnson wrote that Blackwell had elbowed Yardley and that it was intentional. He also drew a diagram of the scene. ATK interviewed Blackwell who denied the allegations. After Johnson gave his statement, ATK suspended Blackwell on March 15. ATK's human resources investigation concluded on March 20 without having discovered any other witnesses, and Blackwell was terminated on April 4 based on the accounts of Yardley and Johnson.

On March 16, the day after Blackwell was suspended, she called an ATK ethics hotline to complain about her suspension and the two incidents with Yardley. ATK's ethics committee began a separate investigation. Blackwell sent a follow up email to David Bales, a member of the committee, on the morning of April 4. She was terminated that same day, and Bales concluded his investigation on May 8. In his report, he concluded that ATK management and human resources had not violated any company policies, but that Blackwell herself had violated at least three policies by acting violently.

Blackwell sued ATK for race, gender, and age discrimination, retaliation, and defamation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA), and the Missouri Human Rights Act. In November 2014, after the lawsuit was filed, Tyler Johnson recanted his earlier statements and claimed that he had not seen the incident between Blackwell and Yardley. Johnson did confirm however that he had written the 2012 report which described the incident. The district court granted summary judgment to all defendants on each of Blackwell's claims. Blackwell appeals the judgment with respect to her Title VII and ADEA discrimination and retaliation claims.

II.

We review de novo the district court's grant of summary judgment, viewing the facts in the light most favorable to Blackwell and giving her the benefit of all reasonable inferences. Robinson v. Am. Red Cross, 753 F.3d 749, 754 (8th Cir. 2014). We may affirm "only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quotation omitted).

To succeed on her race, gender, and age discrimination claims, Blackwell must show "either direct evidence of discrimination or evidence . . . sufficient to create an inference of discrimination under the McDonnell Douglas burden shifting framework." Robinson, 753 F.3d at 754; see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Because Blackwell has not offered any direct evidence of discrimination, she must establish a prima facie case of discrimination by showing that she "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) can provide facts that give rise to an inference of unlawful . . . discrimination" on the basis of a protected class status. Robinson, 753 F.3d at 754. To create an inference that the decision to terminate was based on unlawful discrimination, a plaintiff may show pretext by such evidence as an employer failing to "follow its own policies" or treating "similarly-situated employees in a disparate manner." Young v. Builders Steel Co., 754 F.3d 573, 578 (8th Cir. 2014). Comparator employees must be "similarly situated in all relevant respects." Id. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. If the employer meets its burden, the plaintiff must "prove the proffered justification is merely a pretext for discrimination." Id.

Blackwell failed to establish a prima facie case of discrimination on the basis of any protected class status because she did not show that ATK treated any similarly situated employees in a disparate manner. Blackwell contends that Buie and Yardley

are comparators, but ATK investigators did not conclude that either of her coworkers had committed an act of physical violence against a fellow employee. ATK had reports from Yardley and Johnson that Blackwell had intentionally elbowed Yardley. In contrast, ATK's investigation found that there was no evidence Buie had intentionally hit Blackwell. See Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 925 (8th Cir. 2014) (comparators "need not have committed the exact same offense but must have engaged in conduct of comparable seriousness") (quotation omitted). Yardley had never even been accused of physically assaulting another employee. Blackwell therefore did not show that any other employee was "similarly situated in all respects." See Young, 754 F.3d at 578.

Blackwell also did not establish a prima facie case by showing that ATK failed to follow its own policies when investigating the elbowing incident. See Young, 754 F.3d at 578. As an initial matter, Blackwell did not identify any specific ATK policies or how they may have been violated. Blackwell alleges that the one month delay between the elbowing incident and her suspension was unreasonable. That delay does not suggest any inference of discrimination however because ATK used the month to complete its investigation and did not suspend Blackwell until after Yardley's allegations had been corroborated by Johnson. Blackwell also contends that it was unreasonable for ATK not to have taken a written statement from Yardley about the elbowing incident. Both human resources manager Baker and Blackwell's supervisor Tracy Bredehoeft testified however that it was not customary to take a written statement, and there is no evidence of a policy to the contrary. The district court did not err in concluding that Blackwell had not demonstrated a prima facie case of discrimination.

Even assuming Blackwell had established a prima facie case, ATK articulated a legitimate nondiscriminatory reason for firing her. ATK relied on Johnson's 2012 signed statement about the elbowing incident when it terminated Blackwell. Although Johnson recanted his statement years after Blackwell was fired, ATK had no reason

in 2012 to believe that Johnson was lying.  As we have explained, "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861–62 (8th Cir. 2009). It is uncontested that Johnson made the 2012 statement which corroborated Yardley's claim.  ATK relied on that statement when it terminated Blackwell, and apparently believed in good faith that Blackwell had purposely elbowed Yardley in the back. Here, there is no genuine factual dispute as to "whether the employer acted based on an intent to discriminate rather than on a good-faith belief that the employee committed misconduct justifying termination."  Id.

The district court also correctly concluded that Blackwell's retaliation claim was not substantiated.  To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." Gilooly v. Mo. Dep't of Health & Senior Servs., 421 F.3d 734, 739 (8th Cir. 2005).  The defendant may rebut the plaintiff's claim by advancing a legitimate, nonretaliatory reason for its action, which the plaintiff must then show was only a pretext for discrimination.  Id.  Blackwell claims that she was terminated on April 4, 2012 because earlier that morning she had sent an email to the ethics investigator.  A "mere coincidence in timing" is rarely sufficient to establish retaliation.  Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002).  Blackwell has shown nothing more than a coincidence.  Before she initially called the ethics hotline, ATK had already suspended her for elbowing Yardley. Human resources manager Baker completed his investigation on March 20, 2012, two weeks before Blackwell was fired.  Blackwell did not contest the fact that human resources Baker had completed his investigation and a detailed termination request form prior to her April 4 termination date.  See W.D. Mo. Local R. 56.1(a). Blackwell therefore did not prove a causal connection between her April 4 follow up email and

-6-

her termination. Moreover, ATK showed a legitimate, nonretaliatory reason for terminating Blackwell: that reason being the elbowing incident. Gilooly, 421 F.3d at 739.

## III.

For these reasons we affirm the judgment of the district court.

_____