# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-4204

_____

Patricia L. Jensen

*Plaintiff - Appellant*

v.

IOC Black Hawk County Inc., doing business as Isle Casino Hotel Waterloo

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: February 15, 2018
Filed: September 5, 2018
[Unpublished]

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

PER CURIAM.

Patricia Jensen worked for IOC Black Hawk County, Inc. (IOC) as a security guard. IOC terminated her after complaints that Jensen was making disparaging

_____

[*]This opinion is being filed by Chief Judge Smith and Judge Colloton pursuant to 8th Cir. Rule 47 E.

comments about a coworker's fiancé. Jensen argues her termination was unlawful retaliation after she reported that a different coworker had made sexual comments to her. Jensen sued IOC, claiming IOC violated Title VII of the Civil Rights Act and the Iowa Civil Rights Act. IOC moved for summary judgment, and the district court[1] granted its motion. We affirm.

## I. *Background*

Patricia Jensen worked as a security officer at the Isle Casino Hotel Waterloo. In March 2011, Jensen reported a fellow coworker, Domingo Jaramillo, to a supervisor because he made an inappropriate sexual comment to her. IOC investigated the report, and Jaramillo admitted to the comment, so IOC terminated him. Jensen states that Jaramillo was a popular employee and she was frequently targeted after his termination. Employee Relations Director John Stanford stated that he told Jensen to be careful and to come to him if there was ever a problem.

In June 2011, Jensen received a written coaching for approaching a fellow employee, Mike George, with a complaint about lost-and-found procedures instead of following the proper chain-of-command. Jensen states that George was a good friend of Jaramillo's. George was one of the employees Jensen accused of targeting her after she complained about Jaramillo's conduct.

Then, in August 2011, Jensen had a conversation with fellow employee Rachael Nyland about Nyland's fiancé, another employee at the casino. After discovering the couple was engaged, Jensen stated "What? What's going on? How do we know he's not a killer." J.A. at 76. Jensen told Nyland she was rushing into the marriage and should get to know her fiancé more before marrying him. Nyland reported Jensen's comments to security manager David Taylor. She also left a message for John Stanford.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Later that day, Jensen spoke with Taylor and fellow employee, Cory Kozelka. She expressed doubts about Nyland's relationship, stating "[a]s far as we know, he could be a pedophile or a serial killer." Order at 14, *Jensen v. IOC Black Hawk Cnty., Inc.*, No. 15-CV-2082-LRR (N.D. Iowa Oct. 17, 2016), ECF No. 39–1 (citation omitted). She added that Taylor should "take . . . Nyland under his wing, be like a father figure to her, and tell her to slow down." *Id.* at 13 (ellipsis in original) (citation omitted). Taylor responded that he would not do so and instructed Jensen not to speak to Nyland about her relationship anymore. Jensen describes the tone of the conversation as "light." *Id.* at 14 (citation omitted). Jensen argues this conversation occurred after her conversation with Nyland, while Taylor stated he did not remember whether the conversation happened before. Taylor also said he was "pretty sure" Jensen had talked to Nyland "in a negative way" about her personal life prior to this incident. J.A. at 72. Jensen later told Nyland about her conversation with Taylor and Kozelka.

Shortly thereafter, Taylor informed Jensen that she was suspended. IOC then terminated Jensen several days later for failing to remain uninvolved in Nyland's personal affairs and obey orders.

Jensen sued IOC, arguing her termination qualified as unlawful retaliation in violation of Title VII of the Civil Rights Act and the Iowa Civil Rights Act. IOC moved for summary judgment, and the district court granted the motion, determining that Jensen failed to establish a causal connection between Jensen's complaint and her termination.

## II. *Discussion*

We review the district court's grant of summary judgment de novo. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (citation omitted). "Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted).

-3-

Title VII prohibits an employer from retaliating against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" of a Title VII violation. 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of retaliation, we apply the burden-shifting framework from *McDonnell Douglas Corp. v. Green*.[2] *DePriest v. Milligan*, 823 F.3d 1179, 1187 (8th Cir. 2016).

> To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two. If the plaintiff makes this prima facie showing, the employer must then rebut it by presenting evidence of a legitimate, non-retaliatory reason for the action it took against the plaintiff. If the employer satisfies this burden, the plaintiff is then obliged to present evidence that (1) creates a question of fact as to whether the employer's proffered reason was pretextual and (2) creates a reasonable inference that the employer acted in retaliation.

*Id.* (cleaned up).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Generally, the same framework used for Title VII cases applies to the ICRA. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677–78 (Iowa 2004) ("The ICRA was modeled after Title VII, and therefore we have consistently employed federal analysis when interpreting the ICRA." (citation omitted)). However, Iowa courts are "not bound by federal law, despite consistent utilization of the federal analytical framework." *Pippen v. State*, 854 N.W.2d 1, 18 (Iowa 2014) (citation omitted). To establish causation under the ICRA, a plaintiff must show that the protected activity was a "significant factor" or a "motivating factor"

---

[2]411 U.S. 792 (1973).

in the adverse employment action, not the but-for factor. *Hulme v. Barrett*, 480 N.W.2d 40, 42 (Iowa 1992) (citations omitted); *see also Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 583 (Iowa 2017) (plurality opinion); *id.* at 602 (Cady, C.J., concurring in part and dissenting in part); *id.* at 637 (Appel, J., concurring in part and dissenting in part).

The record lacks any evidence of causation under both the federal and state-law standards. There is no evidence in the record that Stanford or Taylor showed any animus towards Jensen because of the Jaramillo complaint. Jensen admits there was no point in time where Taylor or Stanford behaved inappropriately in response to the Jaramillo investigation. She also admits that, while some employees harassed her, she was never targeted by Stanford or Taylor. And Jensen admits that Stanford attempted to help her by warning her about harassment from other employees due to the complaint. The district court thus correctly found that Jensen's complaint about Jaramillo was neither the but-for cause nor a significant factor in her termination.

Additionally, there is no temporal connection between the Jaramillo complaint and Jensen's termination. While plaintiffs may use circumstantial evidence to prove causation, "[t]he more time that elapses between the two events . . . the weaker the inference of causation." *Robinson v. Am. Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014) (citation omitted). "In such cases a plaintiff must present additional evidence of a causal link, which can include 'escalating adverse and retaliatory action.'" *Id.* (citation omitted). Here, five months passed between Jensen's complaint against Jaramillo and her termination. There was no evidence that management at IOC engaged in an "escalating adverse and retaliatory action." If anything, the record only indicates that management attempted to de-escalate any hostility among employees that arose from her complaint.

The incident involving Mike George also does not prove a causal connection. Jensen argues she was targeted by George because of her complaint against Jaramillo.

However, nothing in the record showed that George played any role in Jensen's termination or that Jensen's complaint against Jaramillo motivated her coaching session regarding George. The incident thus does not establish a causal connection between Jensen's complaint against Jaramillo and her termination. Because Jensen failed to put forth any evidence of a causal connection, the district court was correct to grant IOC's motion for summary judgment.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____